UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) |
| BOSTON AND MAINE CORPORATION, | ) |
| Defendant. | ) |

## COMPLAINT

1. The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting on behalf of and at the request of the Secretary of the United States Department of the Army ("Army"), files this Complaint and, on information and belief, alleges as follows:

## NATURE OF THE ACTION

2. This is a civil action brought pursuant to Sections 107(a) and 113(g)(2) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613(g)(2), and 28 U.S.C. § 2201.  Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the United States seeks to recover unreimbursed response costs the Army has incurred and will incur for response activities undertaken in connection with the release or threatened release of hazardous substances into the environment from, and/or at the area encompassing, a former railroad roundhouse ("Roundhouse") owned and/or operated by the Boston and Maine Corporation ("BMC") and portions of the adjacent Plow Shop Pond where hazardous substances from the operation of the Roundhouse have come to be located (collectively "the Site").  The Site is located on a portion of the Fort Devens

Superfund site in Ayer, Middlesex County, Massachusetts. The United States also seeks a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that will be binding in any subsequent action or actions for recovery of response costs, finding Defendant liable to the Army for all future response costs incurred or to be incurred by the Army in connection with response action activities related to the Site.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action, and the Defendant, pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), and 28 U.S.C. §§ 1331 and 1345. Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516-19.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the release or threatened release of hazardous substances that gave rise to these claims occurred in this judicial district and the real property that is the subject of this action is located in this district.

## DEFENDANT

5. Defendant BMC was incorporated under the laws of Delaware and has its principal place of business in North Billerica, Massachusetts.

6. BMC is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

7. At times relevant hereto, BMC owned and/or operated the Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**FACTUAL BACKGROUND**

8. The Roundhouse was located on a strip of approximately six acres of land, running north to south and abutting the southeastern shore of Plow Shop Pond, in Ayer, Middlesex County, Massachusetts. BMC owned and/or operated the Roundhouse from approximately 1911 through 1935.

9. BMC used the Roundhouse, *inter alia*, for locomotive maintenance and repair. BMC disposed of wastes associated with those operations, including antimony, copper, lead, and polycyclic aromatic hydrocarbons, by dumping them at the north end of its property along the shoreline of Plow Shop Pond (the "Maintenance Byproduct Disposal Area" or "MBDA").

10. BMC discontinued the Roundhouse operations in approximately 1935, and sold the underlying property to the United States in 1942.

11. In 1970, BMC filed for bankruptcy under the Bankruptcy Act of 1898 in the matter captioned, *In the Matter of Boston and Maine Corporation*, CA No. 7-250 (D. Mass). That court presided over the bankruptcy proceedings and issued a Consummation Order on June 17, 1983. That court retained jurisdiction to "consider and take appropriate action with respect to the injunctive provisions of the Order."

12. Until the early 1990s, the Army had neither actual knowledge nor constructive knowledge of the presence of hazardous substances in the soil at the Site or the sediments at the Site beneath the surface water of Plow Shop Pond.

13. On or about November 21, 1989, the United States Environmental Protection Agency ("EPA") placed the Fort Devens Military Installation, encompassing the Site and other areas of contamination, on CERCLA's National Priority List ("NPL") of Superfund sites. On or about November 15, 1991, the Army and EPA entered into a Federal Facilities Agreement

("FFA") outlining the various response actions to clean up for the Fort Devens area. Pursuant to the FFA, the Army has undertaken response actions at the Site, including but not limited to the following:

    A. In September 1993, a contractor on behalf of the Army issued the "Draft Railroad Roundhouse Site Investigation Report;"

    B. In September 1995, a contractor on behalf of the Army issued the "Railroad Roundhouse Supplemental Site Investigation;"

    C. Between November 1999 and January 2001, a contractor on behalf of the Army undertook excavation, analysis, and replacement of contaminated soils from the MBDA;

    D. Between June 2004 and May 2011, contractors on behalf of the Army conducted further study of contaminated sediments in Plow Shop Pond resulting in the issuance of the "Final SA 71 Sediment Risk Characterization;" and

    E. Ongoing response action work related to the Site.

14. The Army has incurred at least $1,600,000 in response to the release or threatened release of hazardous substances at and/or from the Site.

15. The Army continues to investigate and/or respond to hazardous substances contamination at the Site.

## CLAIM FOR RELIEF

16. Paragraphs 1 through 15, inclusive, are realleged and incorporated herein by reference.

17. The response activities described in Paragraph 13 are "removal" actions within

the meaning of Sections 101(23) and 113(g)(2)(A) of CERCLA, 42 U.S.C. §§ 9601(23) and 9613(g)(2)(A).

18. The Site is a "facility" within the meaning of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(9) and 9607(a).

19. The wastes listed in paragraph 9 are "hazardous substances" within the meaning of Sections 101(14), 102(a), and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14), 9602(a) and 9607(a), and 40 C.F.R. § 302.4.

20. There have been "releases" or "threatened releases" of hazardous substances at and/or from the Site within the meaning of Sections 101(22) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(22) and 9607(a).

21. BMC was the "owner" and/or "operator" of the Site within the meaning of Sections 101(20) and 107(a)(2) of CERCLA, 42 U.S.C. §§ 9601(20) and 9607(a)(2), during the period when hazardous substances were "disposed of" at the facility within the meaning of Sections 101(29) and 107(a)(2) of CERCLA, 42 U.S.C. §§ 9601(29) and 9607(a)(2), which incorporate by reference the definition of "disposal" found at 42 U.S.C. § 6903(3).

22. BMC is a "responsible party" within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), and is therefore liable to the Army for any and all unreimbursed response costs incurred by the Army related to the Site.

23. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Defendant is also liable to the Army for any prejudgment interest on the costs expended in preparing and litigating this enforcement action.

24. Pursuant to Sections 107(a) and 113(g) of CERCLA, 42 U.S.C. §§ 9607(a) and

9613(g), Defendant is also liable for any future costs that may be incurred by the Army in connection with its response activities related to the Site.

25. The Army has incurred and will continue to incur "response" costs as defined in Sections 101(25) of CERCLA, 42 U.S.C. §§ 9601(25), and other costs as authorized by Sections 104(a) and (b) of CERCLA, 42 U.S.C. §§ 9604(a) and (b), in response to the release or threatened release of hazardous substances at the Site. The Army has incurred at least $1,600,000 in unreimbursed response costs related to the Site.

26. The Army's response activities at the Site, and the costs incurred incident to those activities, were not inconsistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300 *et seq.*, promulgated under the authority of Section 105 of CERCLA, 42 U.S.C. § 9605.

28. The releases and threatened releases of hazardous substances at or from the Site have caused and will cause the Army to incur response costs in connection with the Site in addition to those incurred to date. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), in any action for recovery of response costs, this Court shall enter a declaratory judgment on liability for response costs that will be binding on any subsequent action or actions to recover further response costs.

## REQUEST FOR RELIEF

WHEREFORE, the United States requests that this Court:

A. Enter judgment in favor of the Army, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), holding Defendant liable for all unreimbursed costs incurred by the Army in connection with the Site, plus interest accrued thereon;

B. Enter a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. § 2201, establishing Defendant's liability related to the Site that will

be binding in future actions by the United States on behalf of the Army to recover further response costs incurred in connection with the Site;

 C. Award the United States its costs and disbursements in this action; and

 D. Grant such other relief that the Court deems just and proper.

                Respectfully submitted,

                ELLEN M. MAHAN
                Deputy Chief
                Environmental Enforcement Section

                */s/ C. A. Fiske*_____
                Catherine Adams Fiske
                Senior Counsel
                Environmental Enforcement Section
                U.S. Department of Justice
                One Gateway Center – Suite 616
                Newton, MA 02458
                (617) 450-0444


                CARMEN ORTIZ
                United States Attorney
                District of Massachusetts

                George Bunker Henderson, III
                Assistant United States Attorney



  OF COUNSEL
  Maria Doucettperry
  Litigation Attorney
  U.S. Army Legal Services Agency
  Environmental Law Division
  9275 Gunston Rd, Suite 4304
  FT Belvoir, VA 22060-5546-